This is an appeal from a judgment granting a motion to dismiss a patient's action against his physician for breach of fiduciary duty and breach of implied contract based upon the physician's alleged unauthorized disclosure of confidential information pertaining to a physical injury which was then the subject of a malpractice action against a hospital.
On January 15, 1980, Rast Mull filed an action against Providence Hospital in Mobile, Alabama, contending that he had been burned by a heating pad while a patient in the hospital. Mull's attorney then wrote to Dr. Samuel Timothy String, the physician who treated Mull for this condition while Mull was in the hospital. The attorney stated that he represented Mull in his claim against the hospital and requested "a brief letter report setting forth [Dr. String's] diagnosis and prognosis of the specified injury." Attached to this letter was an "Authorization for Medical Information" form which requested Dr. String to disclose no information to any person without Mull's prior written consent.
In a letter to Mull's attorney dated August 15, 1980, Dr. String responded to this request, diagnosing Mull's injury as a necrosis of the right hip and stating that his successful treatment of the lesion rendered the prognosis excellent. Without receipt of written authorization from Mull, Dr. String then forwarded copies of this letter report to Providence Hospital and its attorney.
To determine Dr. String's opinion on the cause of, Mull's injury, Mull's attorney deposed Dr. String, who testified that in his medical opinion the heating pad did not cause the condition complained of.
On April 23, 1982, Mull filed suit against Dr. String. The complaint alleged that Dr. String had breached his fiduciary duty and his implied contract with Mull by 1) unilaterally forwarding copies of his letter report to the hospital and its attorney without Mull's consent; 2) verbally disclosing to others his medical opinion on the cause of Mull's injuries without Mull's consent; and 3) failing to include his medical opinion on the cause of Mull's injuries in the letter report requested by Mull.
Mull sought compensatory and punitive damages from Dr. String, based upon the following alleged injuries: mental anguish; the cost of obtaining Dr. String's deposition; the discovery advantage given the hospital in the malpractice action; and impairment of settlement opportunities between Mull and the hospital.
Dr. String filed a motion to dismiss the action for failure to state a claim upon which relief could be granted. The motion was granted, and Mull filed a notice of appeal to this Court.
Mull contends that because Alabama clearly recognizes causes of action for breach of fiduciary duty and breach of implied contract when a physician makes unauthorized extra-judicial disclosures of information, the trial court erred in dismissing his complaint against Dr. String.
Dr. String argues that Mull's initiation of the lawsuit against the hospital, wherein the subsequently disclosed information was an issue, constituted a waiver of, or exception to, any obligation Dr. String owed to Mull.
In reviewing the grant of a motion to dismiss, this Court must take the allegations of the complaint most strongly in favor of the pleader to determine whether the plaintiff could prove any set of facts in support of his claim which would entitle him to relief. See Bahakel v. City of Birmingham,427 So.2d 143 (Ala. 1983); Rule 12 (b)(6), A.R.Civ.P.
Alabama recognizes causes of action for breach of fiduciary duty and breach of implied contract resulting from a physician's unauthorized disclosure of information acquired during the physician-patient relationship, Horne v. Patton,291 Ala. 701, 287 So.2d 824 (1973). The allegations that Dr. String breached these duties by unilaterally forwarding copies of his letter report of Mull's injuries to the hospital and its attorney and by verbally disclosing his medical opinion on the cause of *Page 954 
these injuries to others without Mull's authorization would therefore seem at first blush to state claims upon which relief could be granted.
However, Mull's right to proceed with these causes of action is circumscribed by "exceptions prompted by the supervening interests of society, as well as the private interests of the patient himself." Horne v. Patton, 291 Ala. at 709,287 So.2d at 830. This Court has never delineated the precise dimensions of these exceptions to determine whether a patient completely loses his right to non-disclosure upon initiation of litigation in which the information subsequently disclosed by the physician is in issue.
A survey of other jurisdictions' attempts to reconcile the conflicting policy considerations protecting the patient's privacy interest in non-disclosure, on the one hand, and the public's interest in full disclosure to obtain a just disposition of the controversy, on the other, compels our recognition of a limited exception to the physician's duty of non-disclosure.
In Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249
(1965), the Tennessee Supreme Court affirmed the dismissal of a patient's action against a physician based on the physician's unauthorized disclosure of a letter report on the diagnosis and treatment prescribed for the patient to the attorney of a potential defendant. The court reasoned that, because this report would be legally discoverable if the patient in fact sued the potential defendant for the injuries diagnosed and treated by the physician, the patient had suffered no actionable injury. Similarly, in Hague v. Williams, 37 N.J. 328, 181 A.2d 345 (1962), the primary authority for our recognition of the breach-of-fiduciary-duty cause of action inHorne, the New Jersey Supreme Court held that an exception to the physician's duty of extra-testimonial non-disclosure arises when the patient makes the physical condition subsequently disclosed by the physician to the insurer an element of an insurance claim. In both of these cases, moreover, the absence of a statutory physician-patient testimonial privilege evidenced a legislative intent to uphold the public's interest in full disclosure to obtain a just disposition of the case.[1]
Persuaded by these cases, we recognize a similar exception with regard to Dr. String's disclosure of his letter report to the defendant hospital and its attorney, because this letter report on the diagnosis and prognosis of Mull's injuries was legally discoverable by the defendant hospital. The absence of a statutory physician-patient testimonial privilege in Alabama, moreover, evidences a legislative intent to uphold the public's interest in full disclosure to obtain a just determination of the controversy. See Horne v. Patton, 291 Ala. 701,287 So.2d 824 (1973). And, most importantly, Mull effectively relegated his own privacy interest in non-disclosure in favor of the public's interest in full disclosure when he initiatedlitigation against the hospital which directly concerned the physical condition subsequently disclosed to the defendant hospital and its attorney by Dr. String.
We therefore hold that when a patient sues a defendant other than his or her physician, and the information acquired by the physician as a result of the physician-patient relationship would be legally discoverable by the defendant in that litigation, then the patient will be deemed to have waived any right to proceed against the physician for the physician's disclosure of this information to that defendant or that defendant's attorney.[2] Our recognition *Page 955 
of this narrow exception does not, however, encompass a physician's disclosure of information acquired during the physician-patient relationship to persons other than such a defendant or that defendant's attorney. To hold otherwise and allow public disclosures to unrelated third parties would not only contravene our recognition of the physician's primary duty of non-disclosure in Horne, supra, but also flout the policy considerations protecting the patient's privacy interest in full, confidential disclosure to his or her physician to obtain an accurate diagnosis and treatment.[3]
We therefore hold that the allegation in Mull's complaint which stated that Dr. String verbally disclosed to others his medical opinion on the cause of Mull's injuries, when viewed most strongly in Mull's favor, does state a claim upon which relief could be granted, because Mull could possibly establish that these recipients of Dr. String's unauthorized disclosures were in fact persons other than the defendant hospital and its attorney. Bahakel v. City of Birmingham, 427 So.2d 143 (Ala. 1983). It was therefore error to dismiss this portion of Mull's complaint for failure to state a claim.
As to that aspect of the complaint which claims that Dr. String failed to apprise Mull of his opinion on the cause of the injuries, as opposed to his diagnosis and prognosis, we can only conclude that Dr. String was not asked to give an opinion on causation in the original request for information and, under the circumstances, was under no obligation to do so. This allegation in Mull's complaint was therefore properly dismissed for failure to state a claim.
The judgment of the circuit court dismissing the action for failure to state a claim is affirmed in part and reversed in part.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] Many states which do have such a statutory testimonial privilege nevertheless hold that a patient waives this privilege by bringing or defending a personal injury action in which the physical condition is affirmatively put in issue.See, e.g., Koump v. Smith, 25 N.Y.2d 287, 303 N.Y.S.2d 858,250 N.E.2d 857 (1969), and Sagmiller v. Carlsen, 219 N.W.2d 885
(N.D. 1974).
[2] It is interesting to note that the decisions of those jurisdictions which have declined to recognize this waiver exception contain a strikingly similar rationale — the preeminence of the patient's privacy interest is buttressed upon the presence of a statutory physician-patient testimonial privilege and coercive conduct on the part of defense attorneys who compelled these disclosures from the patients' physicians in private interviews outside the normal discovery procedures — conduct which we by no means countenance in our holding today. See, e.g., Hammonds v. Aetna Casualty Surety Co.,243 F. Supp. 793 (N.D. Ohio 1965) (coercion by insurance company's attorneys); Anker v. Brodnitz, 98 Misc.2d 148, 413 N.Y.S.2d 582
(1979) (defense attorneys' conducting private interviews with physician); Alexander v. Knight, 197 Pa. Super. 79, 177 A.2d 142
(1962) (coercion by defense attorney's physician).
[3] In Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1973), this Court held that such unauthorized disclosures would also constitute an invasion of the patient's right of privacy, especially when the disclosures would prove most embarrassing or harmful to the patient if given general circulation. This privacy interest can, however, be superseded when, for instance, the deleterious or contagious effects of a patient's condition require disclosure to the proper health authorities to protect the greater societal interests.