**Nahum ROMERO, Plaintiff,**

v.

**The CITY OF CLANTON, Chief James Henderson, and Scott Williams, Defendants.**

**No. CIV.A. 02–A–631–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 11, 2002.

Richard P. Rouco, Andrew C. Allen, Birmingham, AL, for Plaintiff.

James W. Porter, Benjamin S. Goldman, Birmingham, AL, William R. Hill, Clanton, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 6) filed by the City of Clanton, Alabama and Chief James Henderson ("the Defendants") on July 12, 2002.

The Plaintiff, Nahum Romero, filed a Complaint in this case on May 31, 2002. He has brought claims for violation of the United States Constitution (Count I),[1] assault and battery (Count II), false impris-

---

1. Although Count I is labeled a Fourteenth Amendment claim, Romero also alleges four

onment (Count III), negligent hiring (Count IV), negligent supervision (Count V), negligent retention (Count VI), negligence (Count VII), outrage (Count VIII), and wantonness (Count IX).

The Defendants filed a brief in support of the Motion to Dismiss, but although given an opportunity by the court to file a reply brief in response to the Plaintiff's brief in opposition to the Motion to Dismiss, have filed no reply.

Upon consideration of the Complaint and the briefs filed, and for reasons to be discussed, the Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## II. *MOTION TO DISMISS STANDARD*

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Complaint are as follows:

Williams was an officer of the City of Clanton Police Department during the events in question. In June of 2001, Williams allegedly unlawfully stopped Romero, conducted an unlawful pat down search, handcuffed Romero and placed him in his police vehicle, drove Romero to a remote location, exposed himself, and attempted to sodomize Romero. Romero seeks to hold Williams liable for his actions under state and federal law. Williams has not moved to dismiss the claims against him.

Romero has also asserted claims against Henderson, who is the Chief of Police of the City of Clanton, and the City of Clanton, arguing that they can be held liable because the constitutional violations which Romero suffered were pursuant to an official policy and custom and because the City of Clanton is vicariously liable under state law for Williams' actions. Romero has alleged that Williams was dismissed from prior employment with a police department for indecently exposing himself to others, and that the City of Clanton Police Department was aware of a complaint against Williams for sexual misconduct and abuse of power before the incident involving Romero occurred.

## IV. *DISCUSSION*

### A. Claims Alleged Against the City of Clanton

The Defendants have moved for dismissal of the claims in the Complaint against

specific constitutional violations as incorporated through the Fourteenth Amendment: (1) deprivation of liberty without due process of law, (2) unreasonable search and seizure, (3) cruel and unusual punishment, and (4) excessive use of force. The court construes the Complaint, therefore, as pleading claims for violations of the Due Process Clause of the Fourteenth Amendment, the Fourth Amendment, and the Eighth Amendment to the United States Constitution.

the City of Clanton on several grounds. The court will separately address the grounds for dismissal as to the federal and state claims.

### 1. Federal Claims

The Defendants have argued that there are no constitutional violations alleged in this case. The Defendants contend that as Williams' actions do not rise to the level of a constitutional deprivation, the City of Clanton, as well as Henderson, cannot be held liable for alleged acts and omissions. In support of this argument, the Defendants cite to *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994), for the proposition that areas in which substantive rights are created only by state law are not subject to substantive due process protection. They contend that, at most, Romero has asserted violations of state law.

■ Romero argues in response, and the court agrees, that the Defendants have misapplied *McKinney* in this case. The constitutional rights which Romero alleges were infringed may coincide with state law rights to some degree, but they are not defined by state law. There are constitutionally-defined protections against unlawful searches and seizures, *see* U.S. Const., amend. IV, and a Fourteenth Amendment due process right to liberty, which includes the right to be free from sexually motivated physical assaults. *See United States v. Lanier*, 520 U.S. 259, 261, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); [2] *Johnson v. Cannon*, 947 F.Supp. 1567, 1572–73 (M.D.Fla.1996).[3] Romero has not, therefore, failed to allege conduct which rises to the level of a constitutional violation.

■ Also in Count I of the Complaint, Romero asserts that his right to be free from cruel and unusual punishment was violated. The protection against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution is only implicated when there is a conviction for a crime, because the Eighth Amendment prohibits particular conduct that would constitute punishment. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Johnson*, 947 F.Supp. at 1572. The Motion to Dismiss, therefore, is due to be GRANTED as to the Eighth Amendment claims asserted.

■ The City of Clanton alternatively moves for dismissal of Romero's constitutional claims on the basis that liability under § 1983 cannot be based on respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(a municipality cannot

---

**2.** Although *Lanier* was a criminal case, the crime charged was a violation of constitutional rights. *Lanier*, 520 U.S. at 261, 117 S.Ct. 1219. The Court remanded the case to the Sixth Circuit for further analysis, but noted that some of the respondent's arguments were untenable, including the argument that the criminal statute could not include violations of rights protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 272 n. 7, 117 S.Ct. 1219. The Court acknowledged, therefore, a Fourteenth Amendment due process right against sexually motivated physical assaults under color of state law.

**3.** The Defendants have not argued that the protections of the Fourth Amendment preclude application of Fourteenth Amendment standards in this case. The initial alleged unlawful seizure and search are cognizable under the Fourth Amendment. Under the factual allegations of the Complaint, it appears to the court that the alleged attempted sexual assault occurred after the initial seizure, while Romero remained detained by Williams, making the Fourteenth Amendment applicable. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir.1996)("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause...."). This issue is, however, one which may be more thoroughly explored if properly raised in a motion for summary judgment.

be held liable under § 1983 on the basis of respondeat superior). To establish liability, a plaintiff must identify an official policy or custom which is the moving force of the constitutional violation. *Id.* at 694, 98 S.Ct. 2018.

In this case, Romero has alleged that the City of Clanton established a policy or custom of deliberate indifference through its police chief, Henderson. Complaint at ¶ 16. Romero alleges that there was a failure to screen applicants, and a failure to adequately train or supervise. *Id.* at § 21.

In *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), a case cited by Romero in support of his contention that deliberate indifference can be established through inadequate screening, the Supreme Court described the standard which must be met in order to find deliberate indifference based on a failure to investigate an employee's background. The Court held that a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411, 117 S.Ct. 1382. The Court explained that to prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged. *Id.* at 410, 117 S.Ct. 1382. The Court further stated that only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the "plainly obvious consequence of the decision to hire the applicant would be a deprivation of a third party's federally protected right can the official's

failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411, 117 S.Ct. 1382. Therefore, while evidence in *Brown* that the applicant had pleaded guilty to traffic offenses and other misdemeanors may have made him a poor candidate as a deputy, the municipality could not be held liable for deliberate indifference unless the plaintiff demonstrated that the decision to hire reflected a conscious disregard for a high risk that the officer would use excessive force in violation of the plaintiff's federally protected right. *Id.* at 414, 117 S.Ct. 1382. A finding of culpability cannot depend simply on the mere probability that any officer inadequately screened will inflict any constitutional injury, but must instead depend on a finding that the particular officer was "highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412, 117 S.Ct. 1382 (emphasis in original).

*Brown* has been applied by the Eleventh Circuit in a case involving allegations of sexual harassment. *See Griffin v. City of Opa–Locka,* 261 F.3d 1295 (11th Cir.2001). In *Griffin,* the court determined that the evidence produced was sufficient to find deliberate indifference based on inadequate screening as there was testimony that the city manager was hired without a background check, that the city had received information alerting it to problems the individual had had in dealing with women, and that a cursory check into his prior employment history would have further alerted the city to prior complaints about the individual. *Id.* at 1314. The court concluded that because the evidence supported the conclusion that the city ignored a known or obvious risk that the individual was highly likely to engage in sexual harassment, the city acted with deliberate indifference. *Id.*

In this case, Romero alleged that prior to joining the City of Clanton Police Department, Williams had been dismissed from another police department on allegations that he had indecently exposed himself to others. Complaint at ¶ 14. Romero has also alleged in the Complaint that when he reported Williams' conduct to Officer Elijah Bearden, Bearden stated that the police department knew about or had suspected Williams' misconduct. *Id.* at ¶ 3. In a portion of the Complaint asserting a violation of state law, Romero also alleges that Williams had a history of sexual misconduct prior to being hired as a police officer for the City of Clanton. *Id.* at ¶ 36. The court must conclude, therefore, that it is not clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the Complaint.

Further, in addition to his allegations of the reasons for Williams' earlier dismissal and that the department had suspicions of Williams' conduct, in the state law portion of his Complaint, Romero also alleges that the City of Clanton's police department was aware of a complaint against Williams for sexual misconduct and abuse of power before the events alleged in the Complaint. Complaint at ¶ 41. Romero states that a complaint of detention, unlawful touching, and attempted sodomy was filed against Williams before the events described in the Complaint. *Id.* at ¶ 47.

A constitutional deprivation can occur "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also Gold v. City of Miami,* 151 F.3d 1346 (11th Cir.1998). To the extent that the City of Clanton was aware of other incidents of similar conduct, this knowledge supports a theory that there was a failure to supervise or train. *See Gold,* 151 F.3d at 1350–51 (deliberate indifference established by knowledge of similar prior incidents).[4]

The theory that there was deliberate indifference in screening Williams during the hiring process, might not be sufficient to establish a policy and custom as to the unlawful seizure and search claim, as there is no allegation that Williams was accused of having unlawfully searched or seized persons in his previous employment. Romero alleges, however, that the City of Clanton, through Henderson, failed to properly train police officers and failed to enforce or implement restrictions on pat down searches. Complaint at ¶ 21. The court concludes that Romero's allegations are sufficient to withstand the instant Motion to Dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)(reversing decision dismissing a complaint on the basis of inadequate pleading of a failure to adequately train). The Motion to Dismiss is, therefore, due to be denied on the Fourteenth and Fourth Amendment claims asserted against the City of Clanton.

The City of Clanton moves for dismissal of any claims for punitive damages for violations of federal law. As Romero concedes, the punitive damages claims under federal law are due to be and will be dismissed as against the City of Clanton. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

4. The sufficiency of any knowledge, if knowledge is proven upon further factual development, can be tested if properly raised in a motion for summary judgment.

#### 2. State Law Claims

The City of Clanton moves for dismissal of the state law claims against it on multiple grounds. The City first asserts that Romero failed to provide proper notice of his state law claims pursuant to Section 11–47–192 of the *Alabama Code.* Romero concedes that the Complaint does not specify whether he complied with the notice requirements, and he asks the court to dismiss the state law claims without prejudice and with leave to amend the Complaint, if appropriate, at a later time. Romero apparently is not conceding that no notice was provided, but merely has stated that no notice has been pleaded in the Complaint.

The determination of whether to dismiss the state law claims against the City of Clanton without prejudice and to allow Romero to amend his Complaint to state those claims at a later date implicates the issue of whether such an amendment would be futile. Intentional tort claims cannot be brought against municipalities. *See Ala.Code* § 11–47–190 (1994). Therefore, even if Romero would ultimately be able to allege and prove timely notice in accordance with Alabama statutory requirements, his claims in Counts II,[5] III,[6] VIII, and IX would not be allowable under Alabama law. *See Beech v. City of Mobile,* 874 F.Supp. 1305, 1314 (S.D.Ala.1994)(assault and battery claim barred); *Rose v. Town of Jackson's Gap,* 952 F.Supp. 757, 767 (M.D.Ala.1996)(false imprisonment claim barred); *Hawkins v. City of Greenville,* 101 F.Supp.2d 1356, 1365 (M.D.Ala.2000)(outrage claim is barred); *Hilliard v. City of Huntsville,* 585 So.2d 889, 892 (Ala.1991)(wantonness claim is barred). Accordingly, those claims are due to be dismissed with prejudice. The court discerns no prejudice to the City of Clanton should the remaining state law claims based on negligence be dismissed without prejudice, however. Accordingly, the court will dismiss the remaining state law claims against the City of Clanton without prejudice, with leave to amend the Complaint to plead these negligence claims within the time allowed for amendments by the Scheduling Order to be entered in this case, if Romero can plead within the strictures of Federal Rule of Civil Procedure 11 that the notice requirements of Alabama state law have been satisfied.

The City of Clanton further moves for dismissal of state law claims for punitive damages on the basis of a state statute prohibiting the award of punitive damages against a municipality. As Romero concedes, the claims for punitive damages for violations of state law are due to be dismissed, *see Ala.Code* § 6–11–26 (1993), and the Motion to Dismiss is due to be GRANTED as to Romero's request for punitive damages for violation of state law by the City of Clanton.

### B. Claims Alleged Against Henderson

None of the violations of state law alleged in the Complaint are asserted

---

5. No allegations of neglect, carelessness, or unskillfulness leading to assault and battery have been alleged in this case. To the extent that a negligent assault and battery claim could be pleaded in this case, the prohibition against intentional tort claims would not apply, and a claim may be re-pleaded, if the notice requirements are satisfied.

6. A false imprisonment claim can be based on less than intentional conduct, so that a claim is not barred as against a municipality. *See Franklin v. City of Huntsville,* 670 So.2d 848 (Ala.1995). To the extent that Romero intends to assert such a claim, it too can be re-pleaded, if the notice requirements are satisfied.

against Henderson. Therefore, the court will turn to the grounds of the Motion to Dismiss as they relate to the only claims asserted against Henderson on the face of the Complaint, namely, the alleged violations of federal law.

Henderson seeks dismissal of any claims against him in his official capacity as being duplicative of the claims against the City of Clanton. Romero responds that he only intended to plead individual capacity claims as against Henderson, but that to the extent that official capacity claims have been pleaded, they are due to be dismissed. Plaintiff's Response at page 10. Accordingly, the court will dismiss any official capacity claims as against Henderson.

■ The Defendants have further argued that the claims against Henderson in his individual capacity are due to be dismissed because he is protected by the doctrine of qualified immunity. In so arguing, the Defendants have relied on a standard for analyzing qualified immunity which is no longer applicable. The Supreme Court has recently altered the Eleventh Circuit's qualified immunity standard to a standard under which a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Officials can be on notice that their conduct violates established law even in novel factual circumstances, although in some cases, a very high degree of prior factual particularity

may be necessary, such as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue. *Hope*, 122 S.Ct. at 2516. When qualified immunity is asserted as a defense, a court must first determine whether the violation of a constitutional right is asserted, then determine whether that right was clearly established. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

In this case, Romero has argued that the law regarding constitutional protections against sexual assault under color of state law and unreasonable searches and seizures is clearly established. The issue with regard to the claims against Henderson, however, is not merely whether the violations of constitutional rights by Williams are clearly established, but whether the basis for Henderson's individual liability is clearly established.

■ Addressing first the allegation of failure to train or supervise for purposes of the unreasonable search and seizure claims, Romero has alleged that the City of Clanton, through Henderson, failed to properly train police officers and failed to enforce or implement restrictions on pat down searches. Complaint at ¶ 21. At this stage in the proceedings, the court must accept as true the allegations of the Complaint. Evidence could ultimately be presented that pat down searches are not restricted by the City of Clanton, and that Henderson should have known that training on the use of such searches was needed. *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. 1197. (stating that the need to train and supervise in limited areas could be so obvious and the likelihood of constitutional violations highly predictable so that liability attaches for a single incident, or that police officers in their discretion so

often violate constitutional rights that the need for further training must be obvious). The court also must conclude at this point in the proceedings that an absence of training under such circumstances could meet the fair warning standard as it is based on the "obviousness" of the need for training. Therefore, the court must conclude that the Motion to Dismiss is due to be DENIED on this claim.

Romero has also argued that Henderson was deliberately indifferent to his Fourteenth Amendment due process rights under clearly established law. As was discussed above, when there is a sufficient nexus between previous conduct and charged conduct, a failure to screen an applicant for employment can be deliberate indifference. *Brown*, 520 U.S. at 411, 117 S.Ct. 1382. The question before the court, therefore, is whether a reasonable person should have known that his failure to adequately screen violated clearly established law.

■ Under the fair warning standard of qualified immunity mandated by the Supreme Court, a case does not have to be factually identical to give "reasonable warning that the conduct then at issue violated constitutional rights." *Lanier*, 520 U.S. at 269, 117 S.Ct. 1219. The allegation in this case, which at this point in the proceedings the court accepts as true, that Williams' previous discharge from employment with a police department for indecently exposing himself to others, is sufficiently close to the conduct in question

here to establish deliberate indifference for purposes of a motion to dismiss. Therefore, under *Brown*, Henderson should have known that his alleged failure to screen Williams was deliberate indifference to the Fourteenth Amendment rights of detainees such as Romero.

In addition, although the *Griffin* case applying the *Brown* analysis was decided after the events in question, another Eleventh Circuit case also supports a denial of qualified immunity. In *Parker v. Williams*, 862 F.2d 1471 (11th Cir.1989), *overruled on other grounds by, Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285 (11th Cir.1998), the court upheld a denial of qualified immunity and determined that where a chief jailer had been convicted of indecent exposure, had undergone treatment for mental problems, and had a history of drug abuse, a sheriff's knowledge of the background, or the fact that he could have discovered this background through minimal investigation, meant that the sheriff could not conclude that his actions in hiring and promoting the chief jailer did not violate the plaintiff's Fourteenth Amendment right to be free from arbitrary risks of serious personal injury during pre-trial detainment. *Id.* at 1477. Under *Parker*, therefore, qualified immunity is due to be denied at this stage in the proceedings.[7]

Also, as earlier discussed, in addition to his allegations of the reasons for Williams' earlier dismissal and the department's suspicions of Williams' conduct, Romero has alleged that the City of Clanton's police

---

7. The court notes that the holding in *Parker* as to the standard for deliberate indifference, although not necessarily the qualified immunity analysis, has been called into question. *See Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1428 n. 10 (11th Cir.1997)("The facts of *Parker* are similar to those in *Brown*

and, for that reason, *Parker's* holding on deliberate indifference may no longer be good law."). Even if *Parker's* qualified immunity analysis is no longer good law under *Brown*, the *Brown* decision itself provides fair warning, accepting the allegations of the Complaint in this case as true.

department was aware of a complaint against Williams for sexual misconduct and abuse of power before the events alleged in the Complaint. Complaint at ¶ 41. To the extent that Henderson was aware of other incidents of similar conduct, this knowledge also supports a theory that there was a failure to supervise or train under clearly established law. *See Gold,* 151 F.3d at 1350–51. Qualified immunity is, therefore, also due to be denied on this basis. *Cf. Sweatt v. Bailey,* 876 F.Supp. 1571 (M.D.Ala.1995)(qualified immunity granted because there was inadequate evidence of supervisor's knowledge of complaints against officer to constitute failure to supervise).

The court emphasizes that it has based its qualified immunity analysis on the allegations of the Complaint. It may be that with further factual development Henderson will be able to demonstrate that he is entitled to qualified immunity. At this point, however, the court must conclude that the Motion to Dismiss on the basis of qualified immunity is due to be denied, without prejudice to Henderson's ability to again raise the defense in a properly filed motion for summary judgment, or at trial.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Motion to Dismiss is due to be GRANTED in part and DENIED in part. Accordingly, it is hereby ORDERED as follows:

1. The Motion to Dismiss is GRANTED as to Romero's claims for punitive damages under state and federal law against the City of Clanton and such claims are DISMISSED with prejudice.

2. The Motion to Dismiss is GRANTED as to Romero's state law claims against the City of Clanton, his claims for intentional torts in Counts II, III, VIII, and IX are DISMISSED with prejudice, and any claims based on negligence in Counts II, III, IV, V, VI, VII are DISMISSED without prejudice.

3. The Motion to Dismiss is GRANTED to the extent that claims have been asserted against the City of Clanton and Henderson for violation of the Eighth Amendment.

4. All federal claims are DISMISSED as against Henderson in his official capacity.

5. The Motion to Dismiss is DENIED as to Romero's Fourth and Fourteenth Amendment claims against the City of Clanton and Henderson in his individual capacity.

The case will proceed on all claims against Williams, and, pending the filing of a properly amended Complaint, against the City of Clanton and Henderson in his individual capacity on Romero's Fourth and Fourteenth Amendment claims.